IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **SHANE FRITH,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**IMPERIUM LENDING, LLC**, a Michigan registered company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Shane Frith ("Plaintiff Frith" or "Frith") brings this Class Action Complaint and Demand for Jury Trial against Defendant Imperium Lending, LLC ("Defendant" or "Imperium Lending") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing unsolicited calls and text messages to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Frith, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Frith is a resident of Laurel Hill, Florida.

2. Defendant Imperium Lending is a Michigan registered company headquartered in Troy, Michigan. Defendant Imperium Lending conducts business throughout this District and throughout the US including in Florida.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant is located in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is located in this District and directed its wrongful conduct from here.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's

representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 3.9 billion robocalls were placed in January 2026 alone, at a rate of 125.2 million per day. www.robocallindex.com (last visited February 22, 2026).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

13. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

14. Defendant Imperium Lending provides mortgage and refinancing solutions to consumers throughout the US.[3]

15. Defendant Imperium Lending places calls and text messages to consumers to generate business.

16. Defendant Imperium Lending places calls and text messages to phone numbers that are registered on the DNC, as per Plaintiff's experience.

17. Defendant Imperium Lending lacks a sufficient opt-out system to ensure that a consumer who notifies Imperium Lending to stop calling/texting them will be removed from their calling/texting list.

18. To make matters worse, Imperium Lending places calls and sends out text messages using the abbreviation UWM, which is short for United Wholesale

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.imperiumlending.com/

Mortgage to avoid liability for its unlawful telemarketing practices, as per Plaintiff's experience.

19. Imperium Lending is a mortgage broker that operates as a UWM partner/correspondent lender.[4]

20. By identifying only as "UWM Partner" rather than disclosing "Imperium Lending," the Defendant violates 47 C.F.R. § 64.1200(d)(4)'s requirement to identify the entity on whose behalf the call/text is being made.

21. This deceptive identification practice makes it harder for consumers to identify the true caller/texter and exercise their rights.

22. A consumer posted a complaint on LinkedIn showing a text message that he received from Matt, a UWM Partner, which was later confirmed to be a solicitation from Imperium Lending:

[4] https://www.instagram.com/reels/CvZ-ySitlbC/



Randell Gillespie · 2nd
+ Follow ···
President, LeaderOne. Supporting high performers. Influen...
7mo · Edited ·

"Matt" at "United Wholesale Mortgage partner". STOP. The article you attached has already been proven to be inaccurate. Your solicitation to a DNS number is illegal. You are hurting our industry. But more importantly, you are taking advantage of consumers.

The number you provide goes to an answering system with no company identified and only a request for me to provide my contact information.

These practices by vendors are the reason compliance is needed. But then, you don't care about compliance.

You have been blocked time and time again. Yet you keep illegally soliciting.

We need to find you and stop you from the games you play.

You are hurting "UWM" as well as others who are following the rules.

#DNS #UWM #Compliance #Mortgage #BadPractices

+1 (248) 970-1098

Text Message · SMS
Today 9:36 AM

We are within the wholesale side of mortgages, meaning rates and fees are way less - we can help you out! Free for a quick 2 minute call?

Matt, Senior FNMA Specialist - UWM Partner



[5]

[5] https://www.linkedin.com/posts/randellgillespie_dns-uwm-compliance-activity-7342931292256182273-w3zt/



Randell Gillespie in Author (edited) 8mo
President, LeaderOne. Supporting high performers. Influenci...

"Matt" with "Imperium lending"? Why did you hang up on me when I asked for your NMLS? You said you work for UWM, then said Imperium Lending. You admitted to soliciting me.



Like · 8 | Reply [6]

23. Consumers have posted many complaints about unsolicited calls and text messages that they received from Imperium Lending online, including:



**Initial Complaint** **Type:** Service or Repair Issues
**Date:** 09/05/2024 **Status:** Answered

This company keeps calling me starting at 8 am call after call, non stop, after every 5-10 calls the number changes but same people. Ive spoke with them and asked to take me off the calling list to which they agreed but still keep harassing/me. I think one rep who goes by [redacted] will call over and over +is very inconsiderate and pushy to get personal info. [7]



**Initial Complaint** **Type:** Service or Repair Issues
**Date:** 07/18/2023 **Status:** Answered

Nonstop calling & texting from the company over the past hour. It just does not stop! Please stop trying to call me! Holy moly! [8]

---

[6] Id.
[7] https://www.bbb.org/us/mi/troy/profile/mortgage-broker/imperium-lending-llc-0372-90047724/complaints
[8] Id.

**Paul M**

**Date:** 07/19/2024

telemarketing fools!! over 50 calls in 3 days, trying to convince us to use them instead of our lender. then try and convince me that a variable heloc thats is 2% higher than what i am getting is better because it will drop to the 6's or low 7's. maybe in 10 years if the fed rate drops to 2%. it should be illegal for them to buy your info and then harass you for days with calls. shame on them and the credit agencies that sell your info [9]

**Robert M**

**Date:** 05/01/2024

35 calls in 55 minutes all from varying fake numbers. will not stop calling despite asking them to take me off their list each and every time I answer. This is harassment and I will be filing a complaint.

**Kerry S**

**Date:** 04/29/2024

After politely declining their services several times, they continued to outreach me. Today alone I received over 10 calls from them. They keep calling from different numbers. I also asked to be put in their do not call list. The representatives that call are EXTREMELY pushy and invasive. [10]

**Luis Ortiz**
3 reviews

a year ago

Horrible experience. I had another mortgage lender helping me refinance my house. But then I was receiving text messages from Imperium Lending stating that they can give me a better deal. They texted me almost every day stating that they can beat my original mortgage lender's rates. I like it when people are persistent so I gave them the benefit of the doubt. I listened to what they had to say, they ran my credit and they did indeed have the better deal than what my original mortgage lender was offering. Imperium then states that all I have to do is bring my mortgage payment to closing and that's it. They had a really [11]

---

[9] https://www.bbb.org/us/mi/troy/profile/mortgage-broker/imperium-lending-llc-0372-90047724/customer-reviews?page=2

[10] Id.

[11] https://tinyurl.com/5yvk7wbj

**Brandy Dell**
5 reviews

★☆☆☆☆ 3 years ago

My husband and i decided to refinance our home to get some cash out to take care of some things. We started working with one company and they warned us that other companies would be calling us as well. And Imperium was the first to call. And they call relentlessly too. They texted me the called up to 7 times in one day. I was telling each person I spoke to that were not interested and they pulled our credit anyway without asking. Then proceeded to talk over me when I kept telling them to put me on the do not call list. They are very pushy and they even lied to me telling me the rates have dropped when in fact they just went up. Please be very cautious when dealing with this company. They will tell you whatever you want to hear just to get your money! [12]

**James Rysinski**
6 reviews

★☆☆☆☆ a year ago

This company, as well as several others, have been aggressively calling and texting me dozens of times per day since I had my credit pulled. Consider working with a different company that does not cold call people at 7:30 am and is more respectful of their prospective clients. [13]

24. In response to these calls and text messages, Plaintiff Frith brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF FRITH'S ALLEGATIONS

25. Plaintiff Frith is the sole owner and user of his cell phone number ending in 0781.

26. Plaintiff Frith registered his cell phone number on the DNC on September 24, 2010.

27. Plaintiff Frith has owned his cell phone number for over 16 years.

---

[12] Id.
[13] Id.

28. Plaintiff Frith uses his cell phone number for personal use only as one would use a landline telephone number in a home, including to communicate with family and friends.

29. Plaintiff Frith pays for his cell phone personally. It is not reimbursed by a business.

30. Plaintiff Frith has never advertised or otherwise used his cell phone for business purposes.

31. Plaintiff Frith is a disabled veteran.

32. The calls that Plaintiff Frith received from the Defendant were received more than 31 days after the Plaintiff registered his cell phone number on the DNC.

33. On December 4, 2025 just before 3:00 PM, Plaintiff Frith received an unsolicited call to his cell phone from 352-296-0472.

34. When Plaintiff Frith answered this call, an employee said that he was calling from United Wholesale Mortgage with a low rate offer on a mortgage.

35. Plaintiff Frith told the employee that he is not interested and asked for the calls to stop.

36. 352-296-0472 immediately disconnects upon being dialed.[14]

37. Despite his clear stop request, Plaintiff Frith received an unsolicited text message to his cell phone on January 6, 2026 at 9:57 AM from 248-971-2220:

---

[14] As of February 22, 2026




38. The text is addressed to Cindy, Plaintiff Frith's wife.

39. The fact that the text message was addressed to 'Cindy' rather than to Plaintiff Frith demonstrates that Defendant's solicitations are mass-generated and unsolicited.

40. On January 7, 2026 at 10:12 AM, Plaintiff Frith received another unsolicited text message to his cell phone from 248-971-2220, the same phone number Simoes used to identify himself initially:




41. On January 8, 2026 at 10:07 AM, Plaintiff Frith received another unsolicited text message to his cell phone from 248-971-2220:



42. On January 9, 2026 at 10:09 AM, Plaintiff Frith received yet another unsolicited text message to his cell phone from 248-971-2220:




43. In order to identify the real sender who called and texted him despite his stop requests, Plaintiff replied back to 248-971-2220 claiming a rate of 6.2% on January 12, 2026 at 1:37 PM.

44. On January 12, 2026 at 1:37 PM, Plaintiff Frith received a text message from 248-971-2220 asking if Plaintiff was ready for a call.

45. When Plaintiff Frith replied back confirming that he was, Plaintiff received a text message from 248-971-2220 confirming that the call would be from the employee's direct line: 248-422-1016:




46. Plaintiff Frith received a call to his cell phone right away from Eric Simoes, who identified himself as an Imperium Lending employee:



47. Simoes provided his contact information to Plaintiff Frith and said he would be waiting for a call back when Plaintiff could provide a mortgage statement.

48. Plaintiff Frith texted "Stop" to 248-422-1016 shortly after the phone call ended:




49. On January 13, 2026, Plaintiff Frith received an unsolicited call to his cell phone from 248-422-1016.

50. When Plaintiff Frith answered this call, Simoes identified himself.

51. Simoes explained that he received the stop request, so he called instead of texting back.

52. Simoes's admission that he received Plaintiff Frith's stop request but chose to call instead of texting constitutes direct evidence that the Defendant had actual knowledge of Plaintiff Frith's do-not-call request and willfully disregarded it.

53. Simoes wanted to provide a mortgage rate for Plaintiff Frith.

54. Again, Plaintiff Frith told Simoes not to contact him again and he ended the call.

55. On February 11, 2026, Plaintiff Frith received another unsolicited text message to his cell phone from a different Imperium Lending employee identifying himself as 'Alex from UWM Partner,' demonstrating that Defendant's failure to honor do-not-call requests is a company-wide practice and not limited to a single employee:


Hi Shane, our VA department has flagged us to conduct an annual review on certain VA loans that closed with Merchants Hm Lndg.

We've identified and addressed many high cost loans in the VA loan market and based on recent equity growth in your property, we believe we have a few potential opportunities that may be available to you. Would you be open to a brief mortgage review? Assuming you're still at 7244 Senterfitt Rd.

- Alex from UWM Partner

Reply STOP to unsubscribe

56. On June 11, 2026 at 10:17 AM, Plaintiff Frith received 2 additional unsolicited text messages to his cell phone from 248-282-4939:







57. On information and belief, Defendant Imperium Lending either lacks a written policy for maintaining a do-not-call list as required by 47 C.F.R. § 64.1200(d)(1), or has implemented a policy that is so deficient as to be functionally nonexistent, as evidenced by the Defendant's repeated failure to honor Plaintiff Frith's multiple do-not-call requests and the numerous consumer complaints reflecting the same pattern of conduct over a period spanning from at least 2023 through the present.

58. Plaintiff Frith had never done business with Imperium Lending or consented to receive calls or text message solicitations from Imperium Lending.

59. The unauthorized solicitation calls and text messages that Plaintiff received from the Defendant have harmed Plaintiff Frith in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

60. Seeking redress for these injuries, Plaintiff Frith, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

61. Plaintiff Frith brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Imperium Lending called and/or texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called/texted Plaintiff.

> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Imperium Lending called and/or texted more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called/texted Plaintiff, (4) including at least once after the Defendant's records reflect the person requested that they stop calling/texting.

62. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in

which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Frith anticipates the need to amend the Class definitions following appropriate discovery.

63. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

64. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant Imperium Lending placed multiple calls/text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call/text message;

(b) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(c) whether the calls/text messages constitute a violation of the TCPA;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

65. **Adequate Representation**: Plaintiff Frith will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Frith has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Frith and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Frith nor his counsel have any interest adverse to the Classes.

66. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the

Classes as wholes, not on facts or law applicable only to Plaintiff Frith. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Frith and the Do Not Call Registry Class)**

67. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

68. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

69. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

70. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Frith and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

71. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Frith and the Do Not Call Registry Class received more than one call and/or text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

72. As a result of Defendant's conduct as alleged herein, Plaintiff Frith and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

73. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Frith and the Internal Do Not Call Class)**

74. Plaintiff repeats and realleges paragraphs 1-66 of this Complaint and incorporates them by reference herein.

75. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf

> the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

76. Defendant placed calls and/or text messages to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/text messages.

77. The TCPA provides that any "person who has received more than one

telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

78. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling and texting activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Frith requests a jury trial.

**SHANE FRITH**, individually and on behalf of all others similarly situated,

DATED this 17th day of June, 2026.

By: /s/ *Stefan Coleman*

Stefan Coleman
COLEMAN PLLC
18117 Biscayne Blvd
Suite 4152
Miami, FL 33160
(877) 333-9427
law@stefancoleman.com

*Attorney for Plaintiff and the putative Classes*